Rosemary M. Rivas (SBN 209147)
David Stein (SBN 257465)
Alexander Bukac (SBN 305491)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
ajb@classlawgroup.com

[Additional Counsel Listed on Signature Page]

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| LUIGI SCIABARRASI, on behalf of himself and all others similarly situated, | Case No. ___3:21-cv-190___ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| DR. ING. H.C. F. PORSCHE AG, PORSCHE CARS NORTH AMERICA, INC., | |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiff Luigi Sciabarrasi, on behalf of himself and all others similarly situated, alleges the following against Defendants Dr. Ing. h.c. F. Porsche AG and Porsche Cars North America (collectively, "Porsche") based on the investigation of his counsel and as to allegations specifically to him, based on personal knowledge:

**INTRODUCTION**

1.      Porsche has long been known as a purveyor of high performing luxury vehicles—offering a range of models from the iconic 911 and Boxster sports cars to the contemporary Panamera and Macan. For a number of years, Porsche has also held itself out as a socially-conscious company—committed to doing right not just by its customers, but also by the environment.  In the age of climate change and an increasing focus toward greenhouse gas emissions, Porsche's website, promotional materials and vehicle manuals are replete with lofty pronouncements professing Porsche's commitment to intelligent innovation, promising superior performance with environmental friendliness.  Porsche says it has always comfortably complied with applicable environmental laws and emissions standards.

2.      In recent years Porsche's parent and sister companies, Volkswagen and Audi, have perpetrated massive emissions-related frauds on both government regulators and the public.  At this point, the details of the scandals are well known; Volkswagen and Audi installed "defeat devices" on test vehicles to evade applicable emissions requirements.  The devices operated to sense when vehicles were undergoing emissions testing, altering performance and producing false emissions output data that allowed the companies to fraudulently certify their vehicles as regulation compliant.  The scandals cost the companies billions of dollars, tarnished reputations and, in some instances, lead to criminal prosecution.   As it turns out, for Porsche, the past is prologue.

3.      Recent reporting tells the story of an all too familiar fraud.  On information and belief, Porsche manipulated thousands of model year 2009-2016 911 and Panamera cars (hereafter "Class Vehicles") to avoid compliance with United States environmental laws and emissions standards.  In the face of increasing environmental regulation aimed at reducing the detrimental effects of noxious exhaust pollutants and harmful greenhouse gases, Porsche followed Volkswagen and Audi's lead in deceiving regulators and the public regarding the quality and characteristics of the Class Vehicles, and the sincerity

1

of its corporate commitments to sustainable innovation and the environment.

4.     Although Porsche continues to conceal the full nature and extent of its wrongdoing, early reporting indicates that Porsche engaged in a pattern of multi-faceted deception:  First, Porsche made physical manipulations to the drivetrains of test vehicles—components critical to delivering the peak performance that Porsche promises.  The alterations had the effect of modifying the gear ratios on test vehicles such that they differed materially from the vehicles that Porsche sold to consumers.  The test vehicle's lower gear ratios delivered a more efficient engine—with better fuel economy and emissions performance.  Porsche certified these results to regulators and distributed vehicles that appeared to comply with applicable environmental laws.  In reality, however, consumers received vehicles with higher gear ratios—but lower fuel economy and impermissibly high emissions output.

5.     Second, Porsche, like Volkswagen and Audi, installed defeat device software designed to detect and respond to emissions testing conditions.  When operating in test mode, the vehicles again appeared to comply with controlling fuel economy and emissions standards and regulators certified the vehicles.  For consumers operating the Class Vehicles under normal conditions, the result was again depressed fuel economy and elevated emissions.

6.     Third, Porsche falsely represented to regulators that its vehicles complied with emissions standards when operating in all driving modes.  In certain vehicles equipped with a high performing Sport+ mode, however, that was not accurate.  In all scenarios, Porsche presented to regulators a manipulated vehicle that, although appearing to satisfy fuel efficiency and emissions standards, was not representative or had the characteristics of the Class Vehicles that Porsche delivered to consumers.

7.     Plaintiff and Class members trusted that Porsche meant what it said about environmental protection.  They relied on Porsche's representations to regulators about the performance specifications of Class Vehicles, including fuel efficiency and emissions compliance.  Plaintiff and Class members did not get what Porsche promised.  Had Plaintiff and Class members known that Porsche was distributing vehicles that differed materially from those that regulators certified as legally compliant, they would not have purchased the Class Vehicles or would have done so at reduced prices.  Plaintiff and Class members are left with vehicles that are diminished in value and exceed binding emissions caps.  Had the government been aware of Class Vehicle's true characteristics they would never have been certified as

CLASS ACTION COMPLAINT

1  compliant, and never entered the market.

2      8.      In the wake of the diesel emissions scandal, Porsche's parent, Volkswagen, promised it

3  would make things right and win back the trust of its customers.  Porsche now must do the same.

4                              **THE PARTIES**

5          **A.  Plaintiff**

6      9.      In June 2011, Luigi Sciabarrasi, a resident and citizen of California, purchased a new 2011

7  Porsche Panamera for approximately $90,000 from Porsche Redwood City in Redwood City, California.

8  In deciding whether to buy the 2011 Porsche Panamera, Plaintiff considered the vehicle's fuel economy,

9  performance and reviewed the representations on the Monroney sticker.  Plaintiff did not—and could

10  not—have known that Porsche had manipulated emissions testing.  Porsche's misrepresentations and

11  omissions about its manipulation of emissions testing were material to Plaintiff's purchase, and Plaintiff

12  relied on them in purchasing the vehicle.  Had Porsche revealed its emissions-related manipulation,

13  Plaintiff would have seen the disclosure and would not have purchased the vehicle or would have paid

14  less for the vehicle.  Porsche's conduct caused Plaintiff damage in the form of overpayment and

15  diminished value.  Plaintiff did not receive the benefit of his bargain.

16          **B.  Defendants**

17      10.     Dr. Ing. h.c. F. Porsche AG is incorporated under the laws of Germany and headquartered

18  in Stuttgart.  It is a subsidiary of Volkswagen AG.  The Class Vehicles are manufactured in Stuttgart (911

19  models) and Leipzig (Panamera models), Germany.  Porsche AG directs the operations of Porsche Cars

20  North America, which acts as its agent in the United States.  As a result, this Court has specific

21  jurisdiction over Porsche AG.

22      11.     Porsche Cars North America, Inc. is a corporation doing business in every state and the

23  District of Columbia and is organized under the laws of Delaware with its principal place of business at

24  One Porsche Drive, Atlanta, Georgia.

25      12.     At all relevant times, Porsche AG and Porsche Cars North America, Inc. manufactured,

26  distributed, sold, leased, and warranted the Vehicles under the Porsche brand name throughout the United

27  States.  Porsche AG and Porsche Cars North America, Inc. also developed and disseminated the owners'

28  manuals and warranty booklets, advertisements, and other promotional materials relating to the Vehicles.

## JURISDICTION & VENUE

13.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Porsche Cars North America because it conducts business in California and has sufficient minimum contacts with California.

15.     This Court has personal jurisdiction over Porsche AG because it has purposefully availed itself of this forum by directing its agent and distributor, Porsche Cars North America, to act here.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, because Porsche caused harm to Class members residing or purchasing vehicles in this district.  Defendants have marketed, advertised, sold and leased the Class Vehicles from dealers located in this District.

## INTRADISTRICT ASSIGNMENT AND RELATED CASE

17.     This action is properly assigned to the San Francisco Division of this District pursuant to N.D. Cal. L.R. 3-2 because a substantial part of the events or omissions giving rise to Plaintiff's claims arose in the counties served by the San Francisco Division.  Moreover, Defendants conduct substantial business in the counties served by this division, have marketed, advertised, sold and leased Class Vehicles in those counties, and have caused harm to Class members who purchased vehicles or reside in those counties, including Plaintiff who purchased his vehicle in San Mateo County.

18.     This Complaint is also related to the Volkswagen "Clean Diesel" MDL No. 2672 proceedings which have been consolidated before Judge Charles R. Breyer, presiding in the San Francisco Division of the District.  As indicated above, and described more fully herein, the fraud alleged here shares substantial similarity with the "Clean Diesel" scandal.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

## FACTUAL ALLEGATIONS

### A. Revelation of Porsche's Gasoline Engine Emissions Fraud

19.    In June 2020, Porsche adopted an updated environmental and energy policy, professing that "[e]cological responsibility and economic success go hand in hand at Porsche."[1]  Porsche declared that "[s]ustainable and responsible action has always been an essential pillar of the sports car manufacturer's corporate philosophy."[2]

20.    At the same time, Porsche was launching an internal investigation into possible manipulation of emissions of Porsche gasoline engines suspected of receiving "illegal changes to hardware and software that could affect exhaust systems and engine components."  The German Newspaper *Bild am Sonntag* first reported news of Porsche's wrongdoing in August 2020.[3]

21.    Porsche reported these suspected irregularities to the authorities.  Germany's auto regulator—the KBA—announced it was investigating.  Porsche claimed the investigation was merely a product of its routine and continuous review of the technical and regulatory aspects of its vehicles.  A Porsche spokesperson described the investigation as focused on "specific hardware and software used in certification testing," which differed from parts used in the Class Vehicles that Porsche sold.[4]  The prosecutor for the Stuttgart region, where Porsche AG is headquartered, has since initiated an inquiry into credible allegations that Porsche employees tampered with test vehicle engines in order to improve carbon dioxide ($CO_2$) emissions.[5]

---

[1] Porsche Adopts New Guidelines for Environmental Protection, https://newsroom.porsche.com/en/2020/sustainability/porsche-new-guidelines-environmental-protection-sustainability-initiative-21181.html (last visited December 29, 2020).
[2] *Id.*
[3] Porsche's Gas Engines Investigated for Possible Emissions Cheating, https://www.thedrive.com/news/35956/porsches-gas-engines-investigated-for-possible-emissions-cheating (last visited December 29, 2020); *see also* Manipulated Gear Hardware at Porsche, New References to Exhaust Gas Manipulation, https://www.auto-motor-und-sport.de/verkehr/porsche-verdacht-manipulation-getriebe-benzinmotoren/ (last visited December 29, 2020).
[4] Porsche Adopts New Guidelines for Environmental Protection, https://newsroom.porsche.com/en/2020/sustainability/porsche-new-guidelines-environmental-protection-sustainability-initiative-21181.html (last visited December 29, 2020).
[5] The Cogwheel Trick:  Porsche Apparently Manipulated the Gearbox of Test Vehicles to Improve the CO2 Emissions—Now the Public Prosecutor is Investigating,

CLASS ACTION COMPLAINT

22.     On information and belief, Porsche's emissions manipulation and fraud took at least three forms—modifications to test vehicle drivetrains, implementation of sophisticated software capable of detecting emissions testing conditions, and false representations that certain driving modes complied with applicable emission criteria.  In all instances Porsche's implementation of these schemes operated to deceive government regulators, Plaintiff and Class members, and the general public about the true qualities of Porsche vehicles.

23.     On information and belief, Porsche's fraudulent emissions schemes impacted the Porsche Panamera and 911 models for model years 2009-2016.  The scope of Porsche's wrongdoing is informed by recent public report.  Porsche, however, continues to conceal the full nature and scope of its emissions scheme, and accordingly the identified list of affected vehicles may change as Counsel's investigation proceeds.

### i.  Modified Test Vehicle Drivetrains

24.     In order to evade emissions requirements, Porsche altered certain components—namely the drivetrain—on test vehicles to achieve improved emissions performance.  Porsche then submitted to regulators emissions testing results from vehicles which differed appreciably from the vehicles that Porsche produced and ultimately sold to Plaintiff and Class members.

25.     Porsche vehicles have a reputation for impressive handling and performance.  Porsche's signature sportscar, the 911, can accelerate to 100 km/hour in under three seconds.[6]  Such peak performance requires careful engineering and coordination of components parts that operate to transfer torque from the engine to the wheels.[7]

26.     Critical to this is the ratio between the gears on the drive shaft and differential.  Vehicles calibrated with higher gear ratios can generate higher RPMs—thereby delivering enhanced performance—but with reduced fuel economy and increased emissions.  Vehicles calibrated with lower

https://www.businessinsider.de/wirtschaft/zahnrad-trick-porsche-manipulierte-offenbar-getriebe-von-testfahrzeugen-um-den-co2-ausstoss-zu-schoenen-b/ (last visited December 29, 2020).

[6] Porsche Adopts New Guidelines for Environmental Protection, https://newsroom.porsche.com/en/2020/sustainability/porsche-new-guidelines-environmental-protection-sustainability-initiative-21181.html (last visited December 29, 2020).

[7] Gearhead 101:  The Drivetrain, https://www.artofmanliness.com/articles/gearhead-101-the-drivetrain/ (last visited December 29, 2020).

CLASS ACTION COMPLAINT

gear ratios, on the other hand, generate lower RPMs and improved fuel economy and emissions output.[8] Faced with these tradeoffs, rather than innovate, Porsche cheated to comply with emissions standards.

27.     Porsche documents and employee surveys reveal that the drivetrain and gear ratios for test vehicles differed appreciably from those on vehicles sold to Plaintiff and Class members.  Porsche's alterations had the effect of presenting to regulators a vehicle that was functionally less dynamic, but more fuel efficient and environmentally friendly.  Internal Porsche investigations suggest that the hardware changes delivered up to an 8% reduction in $CO_2$ emissions in test vehicles.[9]  Porsche, however, did not sell these vehicles to consumers.

28.     Beyond deceiving consumers about their vehicle's true fuel economy and emissions output, Porsche also violated federal law.  The United States Code forbids "any person [from] remov[ing] or render[ing] inoperative any device or element of design installed on a motor vehicle or motor vehicle engine in compliance with regulations . . . prior to its sale and delivery to the ultimate purchaser."[10]

29.     Because U.S. regulators certify vehicle compliance with applicable environmental regulations based on vehicle performance as tested—rather than as sold—Porsche's certification of the Class Vehicles was based on false information.  Plaintiff and Class members therefore purchased vehicles that were not properly certified and should not have been marketed.

### ii.   **Emissions Testing Recognition Software**

30.     Federal law similarly prohibits "any person [from] manufactur[ing], sell[ing], or offer[ing] to sell, or install[ing], any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know

---

[8] The Cogwheel Trick:  Porsche Apparently Manipulated the Gearbox of Test Vehicles to Improve the CO2 Emissions—Now the Public Prosecutor is Investigating, https://www.businessinsider.de/wirtschaft/zahnrad-trick-porsche-manipulierte-offenbar-getriebe-von-testfahrzeugen-um-den-co2-ausstoss-zu-schoenen-b/ (last visited December 29, 2020).

[9] *Id.*

[10] 42 U.S.C. § 7522(a)(3)(A).

CLASS ACTION COMPLAINT

that such part or component is being offered for sale or installed for such use or put to such use."[11]

31.    Much like the past diesel engine emissions scandals that rocked Porsche, and its parent and sister companies Volkswagen and Audi, Porsche also outfitted its gasoline vehicles with similar, sophisticated software aimed at deceiving regulators and the public.  Like Volkswagen and Audi, Porsche's defeat device could be triggered to operate during some or all of emissions testing in order to produce emissions output figures that complied with regulatory requirements, but that did not accurately reflect how the vehicle would perform for the ultimate purchaser.[12]

32.    Although Porsche engineers briefed management on the existence and operation of such programs in November 2015, at the outset of the diesel emissions scandal, Porsche failed to report the wrongdoing to regulators for years and continued to deceive Plaintiff and Class members regarding the true nature of their vehicles.

### iii.    Sport+ Mode Emissions Compliance Representations

33.    Porsche vehicles offer drivers the ability to shift between operational modes to accommodate their driving needs and desires.  For "spirited" drives, Porsche recommends "Sport" mode, delivering drivers sharper shifts and throttle responses, and stiffer suspension.[13]  Premium operation, however, is reserved for the "Sport+" mode which promises "all of the performance your Porsche has to offer," along with "instantaneous" throttle response, "lightning fast" shifts, and "tight and responsive" steering and suspension.[14]

34.    As discussed *supra*, enhanced vehicle performance means reduced fuel efficiency and increased emissions output.  Sport+ mode is no exception.  Applicable environmental laws do not require vehicle manufacturers like Porsche to conduct and submit to regulators emissions test results specific to

---

[11] 42 U.S.C. §7522(a)(3)(B)

[12] The Cogwheel Trick:  Porsche Apparently Manipulated the Gearbox of Test Vehicles to Improve the CO2 Emissions—Now the Public Prosecutor is Investigating, https://www.businessinsider.de/wirtschaft/zahnrad-trick-porsche-manipulierte-offenbar-getriebe-von-testfahrzeugen-um-den-co2-ausstoss-zu-schoenen-b/ (last visited December 29, 2020).

[13] Porsche Irvine, Porsche Driving Modes, https://www.porscheirvine.com/research/driving-modes.htm (last visited December 29, 2020).

[14] *Id.*

CLASS ACTION COMPLAINT

each available driving mode.  Porsche must, however, certify to those regulators that its vehicles do in fact comply with applicable emissions standards in each, and every driving mode.[15]

35.     For years, Porsche represented and certified to U.S. regulators that Class Vehicles complied with emissions requirements in all driving modes, including Sport+.  Porsche's internal investigations, however, reveal that certain vehicles exceeded applicable limits, including those for NOx emissions, when operating in Sport+ mode—thereby rendering Porsche's representations to the contrary fraudulent.[16]

36.     Again, Porsche concealed its scheme and the true nature of Class Vehicles from regulators, Plaintiff and Class members, and continued to knowingly manufacture and unlawfully distribute vehicles that did not comply with applicable law.

37.     Porsche's fraudulent and illegal conduct has caused Plaintiff and Class members substantial harm that is difficult to remedy.  Any vehicle repairs that Porsche may make to retrofit Plaintiff's and Class members' vehicles to perform as promised—i.e., with emissions output consistent with test vehicles—will fail to provide adequate relief.  Repairs necessary to reduce emissions output will necessarily diminish performance and leave Plaintiff and class members with inferior vehicles.  Moreover, any repair will reduce the resale value of Plaintiff's and Class members vehicles, leaving them unable to recoup the financial investment they made in a luxury Porsche vehicle.  In the meantime, Plaintiff and Class members remain unwilling participants in Porsche's scheme to manufacture and market vehicles that blatantly flout environmental laws.

**B.  Porsche's Conduct Fits a Familiar Pattern**

38.     Porsche's blatant disregard for the law is startling, but not unexpected.  Porsche, its parent company, Volkswagen, and sister company, Audi, have all been embroiled in similar emissions-related frauds in recent years.

---

[15] *See* 42 U.S.C. § 7541(a)(1).

[16] The Cogwheel Trick:  Porsche Apparently Manipulated the Gearbox of Test Vehicles to Improve the CO2 Emissions—Now the Public Prosecutor is Investigating, https://www.businessinsider.de/wirtschaft/zahnrad-trick-porsche-manipulierte-offenbar-getriebe-von-testfahrzeugen-um-den-co2-ausstoss-zu-schoenen-b/ (last visited December 29, 2020).

CLASS ACTION COMPLAINT

39.     In 2015, news broke that Volkswagen and subsidiary companies, Audi and Porsche, had installed specialized emissions software on more than a half-million diesel vehicles.  The software was designed to sense the unique parameters of an emissions drive cycle prescribed by U.S. regulators.  The software programs, known as "defeat devices," detect certain steering, throttle, and other inputs used in emissions testing protocols to switch between distinct operational modes.[17]

40.     While operating in the testing mode, vehicles were fully compliant with applicable emissions standards.  Based on these performance metrics, vehicles were submitted and approved for distribution and sale.  However, when operating under normal driving conditions, the vehicle's emission control systems were either deactivated entirely, or operated at reduced function.  In the absence of the software system, changes to fuel pressure, injection timing, and exhaust gas recirculation resulted in enhanced engine performance along with significantly greater—often prohibited—levels of NOx emissions.  In some cases, vehicles which achieved regulation-compliant emissions output when operated in testing mode were found to emit as much as 40 times the federal emissions limit under normal operating conditions.[18]

41.     These issues were extensively litigated, culminating in multibillion-dollar settlements to resolve consumers' claims relating to 2.0L diesel engines in October 2016, and 3.0L diesel engines in May 2017.

42.     During the diesel emissions scandal, regulators discovered that the Volkswagen deception extended beyond diesel engines.  In 2016, the California Air Resources Board ("CARB") announced that it had discovered similar emissions-related software programs in thousands of gasoline-powered Audi vehicles—including in vehicles manufactured months after news of the diesel fraud had become public.[19]

43.     The nature of Audi's deception was familiar, equipping vehicles with a "warm-up" program—software designed to detect the presence of emissions testing conditions.  While operating in

---

[17] Everything You Need to Know about the VW Diesel-Emissions Scandal, https://www.caranddriver.com/news/a15339250/everything-you-need-to-know-about-the-vw-diesel-emissions-scandal/ (last visited December 29, 2020).
[18] Id.
[19] Forbes, CARB Finds New Audi Defeat Device, German Paper Digs Up Smoking Gun Document, https://www.forbes.com/sites/bertelschmitt/2016/11/06/carb-finds-new-audi-defeat-device-german-paper-digs-up-smoking-gun-document/?sh=220573a24d84 (last visited December 29, 2020).

CLASS ACTION COMPLAINT

test mode, with the warm-up program operational, the vehicles maintained a "low rev" mode using less fuel and producing less emissions.  Outside of testing conditions, however, the warm-up program deactivated resulting in reduced fuel economy and inflated emissions output.  Resolving any doubt about the company's true intentions, internal documents revealed that Audi's chief of powertrains directed that the warm-up program should be "designed to be 100% active on the dyno, but only 0.01% in the hands of the consumer."[20]

44.     These issues were again litigated, and again resulted in a substantial settlement for consumers.

45.     The fallout from the foregoing emissions scandals did not stop at financial harm to the corporate bottom line.  Numerous corporate executives have faced criminal prosecution—several of whom have been convicted—or been terminated.  Among the departures was Volkswagen AG CEO Martin Winterkorn, whose tenure came to an end just days after news of the diesel emissions scandal broke in 2015.  Mr. Winterkorn's replacement, Mattias Muller, was previously the CEO of Porsche AG from October 2010 through September 2015—the time during which much of the wrongdoing alleged herein occurred.  Mr. Muller has been described as "a high-ranking executive involved in product development at the same time that the company was developing illegal software and deploying it in vehicles," and is known to have "worked closely with some of the people under investigation over possible involvement in the emissions scandal."[21]  Mr. Muller was unexpectedly removed as CEO in 2018.

46.     Porsche's misconduct as alleged herein is thus the latest iteration of a pattern of conduct well known to its corporate lineage.  Porsche has purposefully manipulated vehicles to evade compliance with applicable emissions criteria, all while representing to regulators and the public that it is a company dedicated to producing legally compliant luxury vehicles in an environmentally conscious manner.

/ / /

/ / /

---

[20] *Id.*

[21] Jack Ewing, Volkswagen Set to Oust Matthias Muller as C.E.O. After Diesel Scandal, N.Y. Times, April 10, 2018, https://www.nytimes.com/2018/04/10/business/volkswagen-matthias-muller.html (last visited December 29, 2020).

CLASS ACTION COMPLAINT

**C.  Porsche Manipulated Emissions in Order to Comply with Evolving Emissions Standards**

47.    It has long been understood that certain vehicle exhaust pollutants pose risks to the health of humans and the environment.  The federal government has regulated certain pollutants, like NOx, as far back as the 1970s.  In the early 2000s, federal regulators retooled their NOx regulatory framework with the adoption of a two-pronged approach.  First, as with other pollutants, manufacturers must ensure that vehicles meet specified NOx thresholds on an average, fleet-wide basis.  Second, manufacturers must also certify that vehicles meet emissions criteria on an individual basis—demonstrating that vehicles conform to emissions caps applicable to the vehicle's "bin."

48.    As alleged herein, Porsche represented to regulators that the Class Vehicles complied with the relevant regulatory requirements in all driving modes, including Sport+, when in fact those vehicles' NOx emissions exceeded their bin limits.

49.    Recently, other greenhouse gases, like $CO_2$, have come under increasing regulatory scrutiny.  The nature and timing of Porsche's deceit coincided with the adoption of increasingly stringent emissions standards for certain pollutants by federal and state regulators.

50.    CARB pioneered these regulatory efforts with the passage of its low emission vehicle legislation in 2006.  California's new rules set fleet-wide greenhouse gas emissions standards for light and medium duty vehicles, thereby requiring a manufacturer to produce a vehicle fleet which, on average, complied with specific $CO_2$ emission caps.  California's phased approach incorporated increasingly stringent $CO_2$ emissions standards for model years 2009-2012.

51.    In 2010, federal regulators adopted nationwide CO2 and fuel economy rules governing vehicle model years 2012-2016.  Collaboration between the EPA and National Highway Traffic Safety Administration ("NHTSA") yielded a similar fleet-wide regulatory scheme.  In terms of greenhouse gas emissions, the EPA mandated average emissions of no more than 250 grams of $CO_2$/mile by 2016.  NHTSA's fuel economy regulations set a benchmark of 34.1 mpg by 2016.

52.    New and more demanding emissions standards governing current and future vehicles have since been implemented.

53.    Porsche sold tens of thousands of Class Vehicles during the period from 2009-2016—vehicles that it represented to regulators and consumers complied with applicable emissions laws.  As

alleged herein, Porsche did not meet the growing environmental challenges with creativity and innovation. Instead, it altered test vehicles, concealed its deception, and distributed vehicles that do not comply with appliable federal laws.

54. Aside from legal violations and environmental harm, Porsche's emissions manipulations also detrimentally effected the performance of the Class Vehicles. Fuel economy calculations—which are critical information for prospective car buyers—are dependent on emissions performance. Increased $CO_2$ production translates directly into reduced fuel economy. Because Porsche's manipulated test vehicles differed from the vehicles it sold to consumers, regulators were induced to certify Porsche vehicles as possessing emissions and efficiency characteristics they did not possess, and consumers were deprived of the performance and fuel economy Porsche promised.

**D.** **Porsche Made Blatant Misrepresentations and Omissions about its Corporate Commitments and Vehicle Specifications**

55. Porsche holds itself out as a company cognizant of the challenges presented by the worsening climate crisis. Porsche claims "these challenges also present new possibilities in terms of design and innovation," ensuring that Porsche's operations "are environmentally and socially compatible while also contributing to its own success." [22]

56. Porsche represents that "[a]s a manufacturer of exclusive, powerful sports cars, Porsche is committed to achieving greater acceptance of its company and products around the world through socially and environmentally responsible conduct."[23] For Porsche, "[e]conomic success, environmental awareness and social responsibility are not opposing concepts" and, instead, "can be combined to form an overall idea that defines the company's attitude."[24] Porsche declares it is "already firmly committed to reducing carbon dioxide ($CO_2$) and particulate matter (PM) in today's vehicles."[25] Specifically, Porsche boasts it's "on course for success when it comes to sustainability" and has reduced the $CO_2$

---

[22] Porsche Sustainability Strategy, https://newsroom.porsche.com/en/company/annual-sustainability-report-2019/sustainability-management-strategy-2019.html (last visited December 29, 2020).

[23] Porsche 2016-17 Environmental Statement at 2, https://newsroom.porsche.com/en/sustainability/porsche-environmental-statement-2017-site-zuffenhausen-15967.html (last visited December 29, 2020).

[24] *Id.*

[25] *Id.*

CLASS ACTION COMPLAINT

emissions per vehicle by more than 75% since 2014.[26]

57.     Importantly, Porsche boldly declares that it "goes without saying that Porsche meets all applicable environmental regulations.  The continuous improvement of environmental protection in the workplace is a top priority."[27]  As alleged herein, Porsche and its corporate affiliates have spent the majority of the last decade engaging in elaborate, technically complex schemes to manipulate vehicles to evade applicable emissions standards and misrepresenting and concealing its wrongdoing and its vehicles' true qualities from regulators and consumers alike.

58.     Despite public apologies and promises to make things right from affiliates in the wake of previous emissions scandals, Porsche's conduct reveals a wide-ranging and familiar fraud that is engrained in corporate culture.  Porsche's promises to "minimize the damaging effects of all activities on the environment to the greatest extent possible," and to "support international efforts to achieve solutions to the global problems of environmental protection"[28] ring hollow.

59.     The veracity and sincerity of Porsche's representations with respect to Class Vehicles fare no better.  For example, the 2009 Panamera was described as "intelligently solving all conflicts of interest," resulting in a car "with a wide range of features most appropriate for such an outstanding gran turismo: the engines are powerful and dynamic, efficient and clean."[29]  Similarly, Porsche explained that the 2012 911 had been "completely redesigned from the ground up," with the new incarnation "appl[ying] singular balance to the priorities of a new era, preserving the classic 911 lines, yet revisiting every inch for advances in power and fuel economy."[30]

---

[26] Porsche Newsroom, Porsche Has Reduced CO2 Emissions by 75 Percent since 2014, https://newsroom.porsche.com/en/2019/company/porsche-sustainability-reduction-co2-emissions-energy-consumption-production-17439.html (last visited December 29, 2020).
[27] Porsche 2016-17 Environmental Statement at 14, https://newsroom.porsche.com/en/sustainability/porsche-environmental-statement-2017-site-zuffenhausen-15967.html (last visited December 29, 2020).
[28] Id.
[29] Porsche Press Release, Porsche Shares More Panamera Innovations, https://www.autoblog.com/2009/03/18/u-s-porsche-panamera-to-get-start-stop-active-aero-among-other/ (last visited December 29, 2020).
[30] Porsche Press Release, New Seventh-Generation Porsche 911 On-Sale Now, https://press.porsche.com/prod/presse_pag/PressResources.nsf/Content?ReadForm&languageversionid=862041&hl=modelle-911-911_carrera_s (last visited December 29, 2020).

60.     In informational brochures for Class Vehicles, Porsche claims it "managed to reduce fuel consumption across all model ranges by a double-digit percentage compared with the respective previous model even though performance has been increased," and attributes to the management team a "high level of environmental responsibility."[31]  Recognizing that "in an era of intensifying debate about global climate change and $CO_2$ emissions, every automotive manufacturer is asking what it has to offer," Porsche promised "excellent performance at the same time as greater efficiency."[32]  While celebrating double digit reductions in fuel consumption and $CO_2$ emissions compared to previous models, Porsche touted that "here, technological developments are carried out with environmental protection in mind," with the goal of "enhanc[ing] performance—but, where possible, not at the expense of the environment."[33]

61.     Class Vehicle owner's manuals detail that Porsche's "emission control system detects malfunctions that could cause increased pollutant emissions or consequential damage etc. well in advance,"[34] and invites owners to "join [Porsche] in [its] efforts for cleaner air in controlling pollutants emitted from the automobile."[35]

62.     Further, on each of the Class Vehicles, Porsche affixed window stickers (known as Monroney stickers) as required by law that represented the fuel economy of each vehicle.  The Monroney stickers also stated that actual mileage may vary depending on how the vehicle is driven and maintained, vehicle options and driving conditions.  Porsche's fuel economy representations on the Monroney stickers, however, were false and/or misleading because Porsche failed to disclose material information, namely, that the stated fuel economy was calculated using test vehicles under testing conditions, in contrast to actual, on-road driving using manufactured vehicles.

63.     Porsche's professed commitments in this regard were further embraced and publicly promoted by senior management, including Board of Management Member Wolfgang Hatz in a February

---

[31] The New 911, at 114 http://www.motorologist.com/wp-content/uploads/2014-Porsche-911-brochure.pdf (last visited December 30, 2020).
[32] Id.
[33] The New 911, at 20, 114 http://www.motorologist.com/wp-content/uploads/2014-Porsche-911-brochure.pdf (last visited December 30, 2020).
[34] 911 and Panamera Manuals at 114.
[35] 911 Turbo Manual, Panamera Manual at 255, 262

CLASS ACTION COMPLAINT

2013 interview.  Mr. Hatz explained that Porsche "has long held a high corporate regard for protecting the environment," urging that "[t]hinking 'green' is not a trend at Porsche; it is a way of conducting business."  Mr. Hatz similarly maintained that "[n]aturally, Porsche has always complied with statutory legal requirements and has, in fact, done so by a comfortable margin."[36]

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

64.     Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiff and Class members could not have discovered that Porsche was manipulating, misrepresenting and concealing the true nature of emissions testing and Class Vehicles' actual emissions and fuel efficiency levels.

65.     Revelation of Porsche's emissions manipulation came in August 2020, when a German newspaper first reported the internal investigation.  Even to date, Porsche has failed to disclose the full nature and scope of its deceit.

66.     Plaintiff and Class members could not have reasonably discovered and did not know of facts that would have caused a reasonable person to suspect, that Porsche purposefully failed to report information within its knowledge to federal and state authorities, dealerships, or consumers.

67.     Nor could a reasonable and diligent investigation have disclosed that Porsche alone possessed information regarding the nature and operation of their sophisticated emissions deception.

68.     Accordingly, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

### B. Fraudulent Concealment Tolling

69.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Porsche's knowing and active fraudulent concealment and denial of the facts alleged herein.

---

[36] Drive the Nation, Wolfgang Hatz, on Intelligent Performance on Driving the Nation, https://www.drivingthenation.com/wolfgang-hatz-porsche-on-intelligent-performance-on-driving-the-nation/ (last visited December 30, 2020).

70.     Rather than disclose the emissions-cheating scheme, or that the true emissions qualities of Porsche vehicles differed from test vehicles, Porsche instead falsely represented that the vehicles complied with federal and state emissions standards.

71.     Accordingly, any otherwise-applicable statutes of limitation have been tolled by Porsche's exclusive knowledge and active concealment of the facts alleged herein.

### C. **Estoppel**

72.     Porsche was and is under a continuous duty to disclose to Plaintiff and Class members the true nature and quality of their vehicles, including their fuel economy, emissions performance, and compliance with applicable federal and state laws.

73.     Although Porsche had the duty to disclose throughout the relevant period that it had engaged in the deception and wrongdoing alleged herein, Porsche chose not to reveal the true facts related to the Class Vehicle's fuel economy and emissions performance, and instead continued to misrepresent the nature and quality of those vehicles.

74.     Accordingly, Porsche is estopped from relying on any statute of limitation defense in this action.

### CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) on behalf of the following classes:

**Nationwide Class:** All persons in the United States who are current or former owners and/or lessees of Class Vehicles.

**California Class:** All persons or entities in California who are current or former owners and/or lessees of Class Vehicles.

76.     The Nationwide and California Classes are collectively referred to herein as the "Class" unless otherwise noted.

77.     Excluded from the Class are Porsche and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the class; and judicial officers and their immediate family members and associated court staff assigned to this case.

78.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

79.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

### A.  Numerosity:  Federal Rule of Civil Procedure 23(a)(1)

80.     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiff is informed and believes that there are not less than tens of thousands of members of the Class.  The precise number and identities of these Class members may be ascertained from Porsche's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice-dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

### B.  Commonality and Predominance:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)

81.     This action involves common questions of law or fact, which predominate over any questions affecting individual class members, including, but not limited to:

      a.  Whether Porsche engaged in the misconduct alleged herein;

      b.  Whether Porsche designed, advertised, marketed, distributed, leased, or otherwise placed vehicles into the stream of commerce in the United States that misrepresented fuel economy;

      c.  Whether Porsche manipulated test vehicles, or otherwise sought to evade government-mandated emissions testing;

      d.  Whether Porsche knew it had manipulated emissions testing and, if so, for how long it knew;

      e.  Whether Porsche failed to disclose and actively concealed material facts to Plaintiff and Class members;

f.   Whether Porsche's conduct violates consumer protection statutes, warranty law, and other laws as alleged herein;

g.   Whether Plaintiff and Class members overpaid for Class Vehicles as a result of Porsche's alleged conduct;

h.   Whether Plaintiff and Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

i.   Whether Plaintiff and Class members are entitled to damages or other monetary relief and, if so, in what amount.

### C.   Typicality:  Federal Rule of Civil Procedure 23(a)(3)

82.   Plaintiff's claims are typical of the other Class members' claims because Plaintiff and each Class member purchased or leased a Class Vehicle and were similarly injured through Porsche's wrongful conduct as alleged herein.

### D.   Adequacy:  Federal Rule of Civil Procedure 23(a)(4)

83.   Plaintiff will fairly and adequately represent the interest of the Class because his interest does not conflict with the interests of other Class members he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation and intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

### E.   Declaratory and Injunctive Relief:  Federal Rule of Civil Procedure 23(b)(2)

84.   Defendants have acted or refused to act on grounds generally applicable to Plaintiff and other Class members, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Class as a whole.

### F.   Superiority:  Federal Rule of Civil Procedure 23(b)(3)

85.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial harms suffered by Plaintiff and Class members are relatively small in comparison to the burden and expense that would be required to litigate

individual claims such that it would be impracticable for Class members to seek individual redress for Defendants' wrongful conduct.

86.     Individualized litigation would also undermine judicial economy and raise the prospect of inconsistent or contradictory judgments, increase the likelihood of delay, and generate additional expenses for all parties and the court system.  The class action device, on the other hand, presents far fewer management challenges and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

## COUNT I

## FRAUD

## (On Behalf of the Nationwide Class)

87.     Plaintiff repeats and realleges the allegations in the paragraphs above as if set forth fully herein.

88.     Plaintiff asserts this count on behalf of himself and Class members.

89.     Porsche made affirmative misrepresentations, partial-truths, and purposefully concealed the true facts in the Monroney stickers affixed to every Class Vehicle, brochures and other marketing materials and advertisements.  Porsche made these misrepresentations, partial truths to, and concealed the truth from, Plaintiff and Class members about its knowing manipulation of emissions testing for Class Vehicles.  Porsche emphasized Class Vehicles' compliance with law, emissions performance and fuel economy, and environmental friendliness.    Porsche disseminated and perpetuated these misrepresentations and omissions through marketing and promotional campaigns, corporate statements, employee interviews, and vehicle brochures and manuals.

90.     Porsche's representations and partial truths were false.  Porsche in fact manipulated Class Vehicles in order to evade government-mandated emissions performance requirements.  Drivetrains were manipulated rendering test vehicles appreciably different from vehicles as-sold; sophisticated software was implemented to detect emissions testing conditions and alter performance accordingly; representations to regulators confirmed that Class Vehicles comported with emissions standards in all operating modes as required by law when that was not true.  As a result of these manipulations and

deceptions, Porsche achieved its desired result—succeeding in certifying Class Vehicles as emissions compliant based on fraudulent test results from materially different test vehicles.

91.     Porsche knew that its misrepresentations and omissions in this regard were false and/or misleading, and purposefully took steps to conceal the truth by manipulating test vehicles and using different component parts. Porsche has been aware of the emissions manipulation for years and, despite strikingly similar emissions scandals involving its parent and sister corporations, Porsche did not come clean.

92.     Porsche had a duty to disclose its manipulation and deception because it had exclusive and superior access to, and knowledge about, its purposeful evasion of government-mandated emissions testing and its subsequent active concealment of those facts. Porsche also had a duty to disclose because it made affirmative representations to government regulators, Plaintiff and Class members, and the general public about the nature, quality and characteristics of Class Vehicles, including fuel economy. Specifically, Porsche affirmatively represented that Cass Vehicles complied with applicable environmental laws and performed at certain emissions and fuel economy standards when they did not. This duty applied at the time Plaintiff and Class members purchased their Class Vehicles, and it continues to apply today.

93.     Porsche intended for Plaintiff and Class members to rely on Porsche's misrepresentations and omissions. Porsche engaged in this course of conduct to sell vehicles in the United States market without having to comply with evolving environmental emissions standards. Porsche's acts were done wantonly, maliciously, oppressively, and deliberately, with the intent to defraud Plaintiff and Class members and with reckless and conscious disregard for Plaintiff's and Class members' rights.

94.     Porsche's misrepresentations, partial-truths, and omissions were material to Plaintiff's and Class members' decision to purchase Class Vehicles. Porsche was aware—and exploited—the fact that Plaintiff and Class members turned to Porsche vehicles for quality performance. Porsche was unable to deliver the performance expected while also complying with applicable environmental emissions standards. Rather than creatively innovate in accord with its professed corporate commitment to respect the environment without compromising performance, Porsche cheated emissions testing and distributed

vehicles that did not comply with the law. Porsche knew that customers would not want these non-compliant vehicles and so it hid those facts.

95.    Plaintiff and Class members could not have discovered the truth about Porsche's emissions manipulation, or the actual nature of their vehicles. Porsche concealed these facts from regulators and the public. Plaintiff and Class members could not have known of Porsche's schemes and ongoing deception.

96.    Plaintiff and Class members reasonably relied on the representations and omissions in purchasing and continuing to drive Class Vehicles. Had Porsche disclosed to Plaintiff and Class members that the fuel economy was achieved only in test vehicles but not the Class Vehicles and that if and when the Class Vehicles are ultimately repaired to comply with applicable emission laws they will not receive the promised fuel economy, Plaintiff and Class members would have seen such discloses as they relied on Porsche's representations on the Monroney stickers, brochures and other advertising materials. Further, had Plaintiff and Class members known the truth about Porsche's emissions deception, and the true characteristics of their vehicles, they would not have acted as they did. Plaintiff and Class members would not have purchased vehicles that were certified for distribution through fraudulent emissions testing, or they would have paid less for those vehicles.

97.    Plaintiff and Class members were injured by their reliance on Porsche's misrepresentations, partial-truths, and omissions. Plaintiff and Class members have been damaged because they purchased vehicles that did not comply with applicable environmental emissions standards at inflated costs and, as a result of that deception, now own vehicles of diminished value. Plaintiff and Class members have been damaged in an amount to be proven at trial.

## **COUNT II**

### **UNJUST ENRICHMENT / QUASI-CONTRACTUAL CLAIM FOR RESTITUTION**

### **(On Behalf of the Nationwide Class)**

98.    Plaintiff repeats and realleges the allegations in the paragraphs above as if set forth fully herein.

99.    Plaintiff asserts this count on behalf of himself and Class members.

CLASS ACTION COMPLAINT

100.    Plaintiff asserts this claim in the alternative to his legal claims and asserts, for the purposes of this claim, that he lacks an adequate remedy at law.

101.    Porsche manipulated test vehicles to produce faulty emissions testing results in order to certify Porsche vehicles for sale in the United States, although such sale was illegal.

102.    Plaintiff and Class members have conferred a benefit upon Porsche, including by purchasing and leasing Class Vehicles—which were represented to be legally compliant but were not. The failure to compensate Plaintiff and Class members in this scenario would be unjust.

103.    Porsche receives revenue in connection with the sale and lease of Class Vehicles.  Porsche was and continues to be unjustly enriched by way of its unlawful conduct and should be required to pay restitution of all monies by which it was unjustly enriched and/or non-restitutionary disgorgement of profits.

## COUNT III

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### (On Behalf of the California Class)

104.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

105.    Plaintiff asserts this count on behalf of himself and the California Class.

106.    Plaintiff asserts this claim in the alternative to his legal claims and asserts, for purposes of this claim, that he lacks an adequate remedy at law.

107.    The California Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent business act or practices."  Cal. Bus. & Prof. Code § 17200.  Porsche, by the conduct alleged herein, has engaged in unlawful, unfair, and fraudulent business practices in violation of the UCL.

108.    Porsche's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, and the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged herein.

109.    Porsche's conduct also constitutes unfair business practices for at least the following reasons:

A. the gravity of harm to Plaintiff and the proposed Class from Porsche's acts and practices far outweigh any legitimate utility of that conduct;

B. Porsche's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and members of the proposed Class; and

C. Porsche's conduct undermines or violates the state policies underlying the Consumers Legal Remedies Act and the False Advertising Law —which protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

110.    As alleged herein, Porsche engaged in fraudulent conduct in violation of the UCL in at least the following ways:

A. by purposefully manipulating the drivetrains and gear ratios on test vehicles—thereby creating test vehicles appreciably different from vehicles as-sold—for the purpose of misleading regulators and consumers regarding the true nature of the Class Vehicles' emissions performance and compliance;

B. by installing sophisticated software in test vehicles capable of detecting emissions testing conditions for the purpose of misleading regulators and consumers regarding the true nature of the Class Vehicles' emissions performance;

C. by falsely representing to regulators and consumers that the Class Vehicles complied with applicable environmental regulations in all operational driving modes when that was not accurate;

D. by knowingly and intentionally misrepresenting the fuel economy in the Class Vehicles;

E. by knowingly and intentionally concealing its misrepresentations and omissions regarding its emissions testing manipulation and the true nature of Class Vehicles' emissions performance from Plaintiff and Class members while simultaneously accepting payments because of these misrepresentations and omissions;

F. by violating federal laws, including the Clean Air Act and accompanying regulations;

G. by violating California laws, including regulations governing emissions and testing requirements; and

H. by professing to be an innovative and environmentally conscious corporation while engaging in the conduct alleged herein.

111. As a direct result of Porsche's alleged misconduct, Plaintiff and Class members have been injured in fact and lost money or property.

112. Porsche's deception caused Plaintiff and Class members to purchase vehicles that do not comply with applicable emissions standards at inflated prices.  Absent Porsche's conduct, Plaintiff and Class members would not have purchased the Class Vehicles, would have purchased them for less, or would have purchased alternative vehicles that accurately portrayed emissions output and fuel economy statistics.

113. Plaintiff requests that the Court enter such orders or judgment as may be necessary to enjoin Porsche from continuing its unfair, unlawful, and deceptive practices and to restore to Plaintiff and Class members any money acquired by Porsche by way of its unfair competition, including restitution as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345.

## COUNT IV

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### Cal. Civ. Code §§ 1750 *et seq*

### (On Behalf of the California Class)

114. Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

115. Plaintiff brings this count on behalf of himself and the California Class.

116. The California Consumers Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

117. Porsche is a "person" within the meaning of Civil Code §§ 1761(c) and 1770 and has provided "goods" within the meaning of Civil Code § 1761(b) and 1770.

118.    Plaintiff and Class members are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

119.    Porsche's conduct, which was intended to result, and which did result in the sale of defective Class Vehicles, violates § 1770 of the CLRA for at least the following reasons:

    A.  Porsche represents that its vehicles had uses, or benefits which they do not have;

    B.  Porsche advertises its good with intent not to sell them as advertised;

    C.  Porsche represents its vehicles are of a particular standard, quality, or grade when they are not;

    D.  Porsche represents that its goods have been supplied in accordance with a previous representation when they have not; and

    E.  Porsche fails to disclose and actively conceals material information.

120.    As alleged herein, Porsche misrepresented and concealed its emissions testing deception and the true nature of Class Vehicles from Plaintiff and Class members.  Porsche had a duty to disclose its emission deception because it had exclusive access to, and knowledge about, its deceptive conduct. Porsche further had a duty to disclose because it made affirmative representations regarding emissions characteristics and fuel economy of Class Vehicles to regulators and consumers knowing that those representations were not accurate.  Knowing that disclosure of its emissions deception would dissuade consumers from purchasing Class Vehicles, Porsche concealed—and continues to conceal—the true nature of its practices.

121.    Porsche's misrepresentations and omissions about its manipulation of emissions testing were material to Plaintiff's purchase, and Plaintiff relied on them in purchasing the vehicle.  Had Porsche disclosed its emissions deception and the true nature of Class Vehicles, Plaintiff and Class members would not have purchased their vehicles or would have paid less.

122.    As a direct and proximate result of Porsche's violations, Plaintiff and Class members have been damaged.  Plaintiff and Class members further seek an order enjoining Porsche's unfair or deceptive practices, equitable relief, and any other just and proper relief available.

123.     Plaintiff seeks only injunctive relief at this time pursuant to the CLRA.  Plaintiff, however, has sent a demand letter to Porsche via certified mail pursuant to the requirements of the CLRA, providing the notice required by Cal. Civ. Code § 1782(a) and all applicable statutory or common law cause of action.  If Porsche does not correct or otherwise rectify the harm alleged by Plaintiff in his letter or this Complaint within the statutorily required thirty-day period, Plaintiff will amend this Complaint to seek monetary damages against Porsche pursuant to Cal. Civ. Code §§ 1781, 1782.

124.     Plaintiff seeks an order awarding costs of court and attorneys' fees under Cal. Civ. Code § 1780(e).

## COUNT V

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### Cal. Bus. & Prof. §§ 17500 *et seq.*

### (On Behalf of the California Class)

125.     Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

126.     Plaintiff asserts this count on behalf of himself and the California Class.

127.     California's False Advertising Law provides that it is "unlawful for any corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

128.     Porsche caused to be made or disseminated through California and the United States, by way of advertising, marketing, vehicle documents such as the Monroney stickers and brochures, and employee interviews, statements about fuel economy and emissions that were untrue or misleading, and which were known, or by the exercise of reasonable care should have been known by Porsche, to be untrue and misleading to consumers, including Plaintiff and Class members.

129.     Porsche's misrepresentations and omissions regarding its emissions testing and the nature and quality of Class Vehicles were material and likely to deceive a reasonable consumer.  Porsche's misrepresentations, partial-truths, and omissions were material to Plaintiff's and Class members' decision to Purchase the Class Vehicles.  Porsche was aware—and exploited—the fact that Plaintiff and Class members turned to Porsche vehicles for quality performance.  Porsche was unable to deliver the performance expected while also complying with applicable environmental emissions standards.  Rather than creatively innovate in accord with its professed corporate commitment to respect the environment without compromising performance, Porsche cheated emissions testing and distributed vehicles that did not comply with the law.  Porsche knew that customers would not want these non-compliant vehicles and so it concealed the truth.

130.     Plaintiff and Class members reasonably relied on the representations and omissions in purchasing and continuing to drive Class Vehicles.  Had Plaintiff and Class members known the truth about Porsche's emissions deception, and the true characteristics of their vehicles, they would not have acted as they did.  Plaintiff and Class members would not have purchased vehicles that were certified for distribution through fraudulent emissions testing, or they would have paid less for those vehicles.

131.     Plaintiff and Class members were injured by their reliance on Porsche's misrepresentations, partial-truths, and omissions.  Plaintiff and Class members have been damaged because they purchased vehicles that did not comply with applicable environmental emissions standards at inflated costs and, as a result of that deception, now own vehicles of diminished value.  Plaintiff and Class members have been damaged in an amount to be proven at trial.

132.     Porsche still has not disclosed the full scope of its deception, which is part of a familiar pattern of evading emissions requirements through vehicle manipulation.

133.     Plaintiff and Class members request that the Court enter such orders and judgments as may be necessary to enjoin Porsche from continuing its unfair, unlawful, and deceptive conduct, including to restore to Plaintiff and Class members any money acquired by its unfair competition, including restitution, and restitutionary disgorgement, and for such other relief as permitted.

## COUNT VI

## BREACH OF EXPRESS CALIFORNIA EMISSIONS WARRANTY

### (On Behalf of the California Class)

134.    Plaintiff repeats and realleges the allegations in the paragraphs above as if fully set forth herein.

135.    Plaintiff asserts this count on behalf of himself and the California Class.

136.    All Class Vehicles are covered by express California Emissions Warranties as a matter of law.  *See* Cal. Health & Safety Code § 43205; Cal. Code. Regs. Tit. 13, § 2037.

137.    These Emissions Warranties generally provide that "the vehicle or engine is . . . [d]esigned, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board."  *Id.*  The warranty provision applies without time or mileage limitations.  *Id.*

138.    The Emissions Warranties also specifically warrant against performance failures of emissions control systems for three years or 50,000 miles, and against defects in emissions-related parts for seven years or 70,000 miles.  *See Id.*

139.    California law also imposes express duties on "the manufacturer of consumer goods sold in this state and for which the manufacturer has made an express warranty."  Cal. Civ. Code § 1793.2. Among those duties is the obligation that if the manufacturer or its representative in the state "is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle or promptly make restitution to the buyer" at the owner's option."  Cal. Civ. Code § 1793.2(d).

140.    As alleged herein, as a result of Porsche's deceptive emissions testing schemes, the vehicles sold to Plaintiff and Class members did not conform to applicable CARB regulations.  It was Porsche's duty to ensure that they did, and Porsche's failure to do so constitutes a breach of that warranty.

141.    This Complaint constitutes written notice of nonconformity to Porsche and shall constitute return of the goods.  *See* Cal. Civ. Code § 1793.2(c).  Further, Plaintiff and Class members are excused from the requirement to deliver nonconforming goods to the manufacturer's service and repair facility because Porsche refuses to accept them and delivery of Class Vehicles cannot be reasonably accomplished.  *Id.*

142.    In addition to all other damages and remedies, Plaintiff and Class members are further entitled to recover a civil penalty in an amount of up to two times the amount of damages for the violation alleged herein.  *See* Cal. Civ. Code § 1794(e)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for the following relief against Porsche as follows:

A.    Certification of the proposed Classes, including appointment of Plaintiff's counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent and unfair business practices alleged herein;

C.    Relief sufficient to wholly reimburse Plaintiff and Class members for all economic losses stemming from Porsche's inaccurate disclosures related to fuel economy, and for any other consequential damages resulting therefrom;

D.    Costs, restitution, damages, rescission and disgorgement in an amount to be determined at trial;

E.    Punitive damages as permitted by applicable law;

F.    An order requiring Porsche to pay pre- and post-judgment interest;

G.    An award of costs and attorney's fees; and

H.    Such other and further relief as may be appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 8, 2021                          **GIBBS LAW GROUP LLP**

By:    */s/ Rosemary M. Rivas*

Rosemary M. Rivas (SBN 209147)
David Stein (SBN 257465)
Alexander Bukac (SBN 305491)
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

CLASS ACTION COMPLAINT

rmr@classlawgroup.com
ds@classlawgroup.com
ajb@classlawgroup.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
David J. Casey, Jr. (SBN 60768)
Gayle M. Blatt (SBN 122048)
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232
dcasey@cglaw.com
gmb@cglaw.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT